**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Northern Division**

| | | |
|---|---|---|
| PHILIPS NORTH AMERICA LLC | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. _____ |
| | ) | |
| STEVEN HAYES | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## COMPLAINT

Plaintiff, Philips North America LLC ("Philips"), through undersigned counsel, hereby brings this action against Defendant Steven Hayes ("Hayes") and states as follows:

### Introduction

1.     This action arises out of Defendant Hayes' misappropriation of highly confidential and sensitive Philips documents and consequent breach of his Employee Ethics and Intellectual Property Agreement (the "Proprietary Information Agreement") with Philips.

2.     While serving as Vice President and North America market leader of Philips' magnetic resonance ("MR") equipment division for nearly two and a half years, Hayes had access to highly confidential information concerning Philips' pending sales, production status and marketing strategies for its MR division. Hayes had both common law and contractual obligations to maintain the confidentiality of this information.

3.     Despite this, in November 2019, Hayes surreptitiously accepted an executive role in the MR division of his former employer, GE Healthcare ("GE Healthcare"), a direct competitor

of Philips. Rather than promptly informing Philips that he had accepted employment with a competitor, Hayes concealed this information from Philips and instead spent the next six weeks improperly acquiring, accessing and retaining for himself Philips' confidential and proprietary information, including data about completed and pending MR sales, extensive customer information and presentations concerning Philips' marketing and sales strategies.

4.      Hayes took this confidential and proprietary information with him to GE Healthcare, where he is now serving as National Modality Leader for MR, and has been utilizing it to help solicit Philips' customers in violation of his Proprietary Information Agreement and federal and state law.

### The Parties

5.      Philips is a Delaware limited liability company which manufactures and sells magnetic resonance imaging scanners as well as other medical equipment, devices and technology to health care systems and providers throughout the United States.  Philips has its principal place of business in Cambridge, Massachusetts.

6.      Defendant Steven Hayes is, upon information and belief, a citizen of the State of Maryland residing at 706 Hidden Steam Court Westminster, Maryland 21158.  From July 24, 2017 to January 6, 2020, Philips employed Hayes as Sales, Senior Director – Market Business Manager, MR.

7.      Prior to accepting employment with Philips, Hayes had twice worked for GE Healthcare, first as a MRI Sales Specialist from 2008 to 2013, then as a Senior Strategic Business Leader for MRI from September 2014 through August 2017 immediately prior to his employment with Philips.

2

**Jurisdiction and Venue**

8.     This Court has subject matter jurisdiction over this matter pursuant 28 U.S.C. § 1332(a)(1) because the parties are citizens of different states and the amount in controversy exceeds $75,000.

9.     This Court also has jurisdiction over this action pursuant to the Defend Trade Secrets Act, 18 U.S.C. § 1836(c), and 28 U.S.C. §§ 1331, 1338.

10.     This Court has supplemental jurisdiction over the other claims asserted herein, pursuant to 28 U.S.C. § 1367.

11.     Hayes is subject to this Court's personal jurisdiction pursuant to due process as he is a citizen and resident of the State of Maryland.

12.     Venue is proper in this Court because, upon information and belief, Hayes resides in this District and performed and continues to perform his employment within the Baltimore, Maryland area, and therefore the compensation he earned from Philips and the injurious conduct he has engaged in occurred in substantial part in this District.

**Hayes Enters a Valid and Enforceable Proprietary Information Agreement with Philips**

13.     Upon accepting his offer of employment with Philips on July 24, 2017, Hayes entered into his Proprietary Information Agreement.  In the Proprietary Information Agreement, Hayes acknowledged that Philips has valuable, legitimate and protectable business interests in protecting its property, secret, confidential or proprietary information or data and relationships with its customers and third-parties.

14.     Given Philips' legitimate and protectable interests in protecting its property, secret, confidential or proprietary information or data and business relationships, and in consideration of his accepting and continuing at will employment with Philips, Hayes agreed:

3

1. Not to use, publish or otherwise disclose (except as [his] job require[d]) either during or after [his] employment, any secret or confidential (proprietary) information or data of [Philips] or its customers or any other third party received by [Philips] in confidence.

2. Upon the termination of [his] employment, to deliver promptly to [Philips] all written and other materials that relate to the business of [Philips] or its affiliates including, without limitation, computers, laptops, hand-held computers and cell phones.

*See* Proprietary Information Agreement attached hereto as *Exhibit A.*

### The Highly Competitive MR Equipment Market

15.     In both his roles at Philips, Hayes served as a leader in Philips' MR sales organization, working from his home in Westminster, Maryland.

16.     The MR sales organization leads Philips' efforts to market its MR equipment to hospitals, medical centers and other customers.  Hayes' responsibilities included oversight of Philips' MR sales organization throughout the United States.  Therefore, Hayes had knowledge and access to information concerning Philips' MR sales and marketing strategies, customers and prospective customers and pending and completed sales nationwide.

17.     The sales process for MR equipment is highly complex and time-consuming, typically extending for a year or more.  Each piece of MR equipment is custom manufactured to the customer's specifications.  A single sale of MR equipment can generate over $1 million in revenue and some sales total several million dollars.  Accordingly, Philips has a substantial investment in each and every sale or potential sale of MR equipment.

18.     The MR equipment market is highly competitive.  Due to the cost and complex nature of this equipment, a limited number of global manufacturers regularly compete with each other for customers and sales.  GE Healthcare is among this group of global competitors.

19.     For the same reasons, the primary customers for MR equipment are hospitals, medical centers and imaging centers with large capital equipment budgets who are generally affiliated with major health systems or research institutions.  Philips, GE Healthcare and other MR equipment manufacturers focus their sales efforts on this customer base.

**Hayes's Access to Philips' Trade Secrets and Confidential Information**

20.     Throughout the duration of Hayes's employment, Philips continued to invest significant resources into its MR sales organization and entrusted Hayes with a considerable amount of secret, confidential and proprietary information.

21.     Specifically, as a high-level employee in Philips' MR sales division, Hayes had access to valuable secret, confidential, and proprietary information owned by Philips, which related to Philips' MR products, including, but not limited to, MR equipment manufacturing information, national product supply funnel information, business and strategic plans, marketing, account strategies, pricing, national orders and sales, and relationships with, customers and clients, and other proprietary Philips material (collectively, "Philips' Trade Secrets").

22.     For example, during his employment with Philips, Hayes had access to documents and information concerning pending, potential or completed sales to specific customers, and Hayes was directly involved with pricing of the equipment involved in those pending or potential sales, thus influencing Philips' gross margins on those sales.  Hayes received regular update from field sales managers on the status of sales efforts with specific customers.

23.     Hayes was also aware of the manufacturing status of customized MR equipment for completed sales and received regular reports on that status so that the MR sales team could update customers on equipment delivery.  Hayes was also privy to and involved in the development of Philips' MR sales and marketing strategies and sales initiatives.

24.    Hayes was aware that Philips' Trade Secrets are extremely valuable to Philips because they are secret, and were difficult, costly, and time-consuming to develop, and are only known to a select group of people at Philips, and because such information is not made public and cannot be independently ascertained through proper means.

25.    Moreover, at all relevant times, Philips exercised reasonable efforts to preserve the secrecy of its Trade Secrets.  Among such efforts, Philips requires employees, such as Hayes, to sign Proprietary Information Agreements in order to protect its Trade Secrets, limits dissemination of Trade Secret information within Philips itself, and spends considerable resources on internal information technology security programs, features and systems to safeguard against employees improperly accessing, exporting and retaining Philips' Trade Secrets (collectively, "Philips' Information Security Features").

26.    Philips' Trade Secrets also have great independent economic value to Philips, and virtually any competitor which sells MR equipment, such as GE Healthcare.  Philips' Trade Secrets provide product, profit margin and supply chain insight, as well as customer-specific account strategy and history, all of which provide a competitive advantage in the sales and marketing of MR products and services to customers or clients, especially prior or existing Philips customers and clients.

**Hayes Accepts an Offer of Employment from GE Healthcare and Improperly Acquires and Retains Philips' Trade Secrets for Use in His New, Competing Role with GE Healthcare**

27.    Unbeknownst to Philips, in or about the fall of 2019, Hayes began communicating with GE Healthcare regarding an executive level role in GE Healthcare's MR division.

28.    On November 19, 2019, GE Healthcare offered Hayes the position of National Modality Leader for MR Equipment, a role which, upon information and belief, is substantially similar to Hayes' Vice President role with Philips.  In this role with GE Healthcare, Hayes would

6

be leading GE Healthcare's efforts to compete with Philips for customers and sales of MR equipment nationally.

29.     The next day, Hayes accepted GE Healthcare's employment offer.  However, undoubtedly aware that informing Philips that he had accepted a job with a competitor would have resulted in his immediate termination or, at the very least, in Philips making efforts to shield its sensitive and confidential business information from him, Hayes did not inform Philips of his decision until on or about January 6, 2020, approximately six weeks later.

30.     By not promptly informing Philips of his acceptance of a similar executive level position in GE Healthcare's MR division, Hayes continued to receive access to the Trade Secrets and other confidential Philips information.

31.     Hayes used this time to improperly acquire and retain multiple documents containing information regarding pending sales, manufacturing status of completed orders, customer information, marketing and sales strategies and other confidential, proprietary and secret Philips documents and data, including Philips' Trade Secret information.

32.     Specifically, according to a forensic analysis of Mr. Hayes' Philips-issued computer, Hayes printed approximately 40 confidential, proprietary and secret documents from Philips' computer system during the time between his acceptance of a position at GE Healthcare and his separation from Philips.  Most of these documents were printed in series on a number of dates during Hayes' pre-departure time period, including on December 10, December 11, December 16 and December 30, 2019.

33.     To date, Hayes has not returned any of these hard copy documents to Philips despite his Proprietary Information Agreement requiring him to do so.

34.     Hayes also accessed about 25 confidential, proprietary and secret documents on Philips' document management system during the last week of his employment, also in succession over several days, including on December 27 and December 31, 2019 and January 2, 2020.

35.     Forensic evidence also establishes that Hayes attempted to connect a flash drive to his Philips computer late in the afternoon of January 2, 2020, and also attempted to connect other flash drives to his Philips computer at undetermined times.

36.     Upon information and belief, Hayes was planning to use these flash drives to download and retain additional Philips proprietary information.  However, Philips' Information Security Features blocked Hayes from transferring any data to his flash drive.

37.     Hayes' unsuccessful attempt to download additional Philips Trade Secrets, during the final week of his employment further evidences Hayes' ongoing misappropriation of Philips' Trade Secrets and other confidential information.

38.     Indeed, the Philips documents that Hayes printed or accessed during the final six weeks of his employment include some of the most highly sensitive of Philips' Trade Secrets such as its business plans for 2019 and 2020, lists of pending orders and sales funnels for the entire United States, information regarding manufacturing status of completed sales, presentations regarding new Philips market initiatives, marketing and strategic plans and detailed information regarding specific Philips customers, orders, pricing and sales initiatives.

39.     In addition, although it appears that Hayes was unsuccessful in his attempts to copy Philips' confidential, proprietary and secret information to a flash drive in the last several days of his employment, forensic evidence also reflects that Hayes had previously successfully saved Philips' Trade Secrets documents to a flash drive, and that Hayes accessed these documents after leaving Philips and commencing employment with GE Healthcare.

8

40.     Moreover, although Hayes had access to Philips' Trade Secret information in his leadership role at Philips, there was no legitimate business reason for Hayes to have printed or accessed all of these documents at the time when he was preparing to leave Philips.  In fact, many of the documents that Hayes printed were large spreadsheets and presentations, which would be cumbersome to print or use in hard copy, and thus would normally be accessed electronically rather than in printed form.

41.     For all these reasons, it is clear that Hayes' purpose for improperly acquiring and retaining the documents or information containing Philips' Trade Secrets was to use them in his new role at GE Healthcare.

42.     Additionally, upon information and belief, since commencing his new competitive role with GE Healthcare, upon information and belief, Hayes has in fact *used* Philips' Trade Secrets and other confidential business information to compete against Philips.

43.     As an example, since commencing his new competitive role with GE Healthcare, Hayes was involved in soliciting, on GE Healthcare's behalf, a large health system customer with whom Hayes worked while at Philips.  Several of the Philips documents which Hayes printed or accessed during the weeks prior to his departure from Philips related specifically to the aforementioned customer and describe pending or potential Philips sales to this customer.  Moreover, Hayes was involved in pricing of substantial pending sales to this customer, even during the last week of his employment with Philips, and therefore had knowledge of Philips' pricing and gross margins on those sales and how GE Healthcare could undercut these margins in order to secure the customer's business.

44.     Thus, Hayes' misuse of Philips' Trade Secrets and other valuable business information has already financially impacted Philips and the harm and threatened harm that Hayes' conduct is causing to Philips' business is ongoing.

## Count I:
## Misappropriation of Trade Secrets under the Defend Trade Secrets Act

45.     Philips repeats and realleges each and every allegation of the foregoing paragraphs as if fully set forth herein.

46.     As alleged above, Philips owns certain confidential, proprietary, and secret information (i.e., the Trade Secrets), which constitute trade secrets within the meaning of 18 U.S.C. § 1839(3).

47.     Philips has taken reasonable measures to maintain the confidentiality of the Trade Secrets, including the measures alleged herein.

48.     Philips' Trade Secrets derive independent economic value from their nature and from not being generally known to, and not being readily ascertainable through proper means by, another person or entity who could obtain economic value from the acquisition, disclosure, or use of the information.

49.     As a result of his high-level position with Philips and his Proprietary Information Agreement, Hayes had a duty to maintain the secrecy of Philips' Trade Secrets and to act in good faith and with loyalty towards Philips.

50.     In violation of his duties and Philips' rights, Hayes willfully and maliciously misappropriated Philips' Trade Secrets by downloading, printing and otherwise knowingly improperly accessing and acquiring Philips' Trade Secrets shortly prior to his resignation from Philips and for purposes of taking said Trade Secrets with him to his new employer, GE Healthcare, and using those Trade Secrets for the benefit of GE Healthcare and himself.

10

51.     Upon information and belief, after commencing employment with GE Healthcare in 2020, Hayes also used or disclosed Philips' Trade Secrets for the benefit of himself and his new employer in his new competitive role with GE Healthcare, and without Philips' consent to do so.

52.     As the direct and proximate result of Hayes' conduct, Philips has suffered and, if not stopped, will continue to suffer, irreparable injury and significant damages, in an amount to be proven at trial, including but not limited to: a) actual damages caused by Hayes' misappropriation of the Trade Secrets; b) unjust enrichment arising from Hayes' misappropriation; c) an award of exemplary damages for Hayes' willful and malicious misconduct; and d) an award of attorney's fees.

53.     Because Philips' remedy at law is inadequate, Philips also seeks injunctive relief to recover and protect its Trade Secrets and other legitimate business interests.

## Count II:
## Misappropriation of Trade Secrets under the Maryland Uniform Trade Secrets Act

54.     Philips repeats and realleges each and every allegation of the foregoing paragraphs as if fully set forth herein.

55.     As alleged above, Philips owns certain confidential, proprietary, and secret information (i.e., Philips' Trade Secrets), which constitute trade secrets under the Maryland Uniform Trade Secrets Act, MD Comm. L. Code § 11-1201 *et seq.* (2016).

56.     Philips has taken reasonable measures to maintain the confidentiality of the Trade Secrets, including the measures alleged herein.

57.     Philips' Trade Secrets derive independent economic value from their nature and from not being generally known to, and not being readily ascertainable through proper means by another person or entity who could obtain economic value from the acquisition, disclosure, or use of the information.

11

58.    As a result of his high-level position with Philips and his Proprietary Information Agreement, Hayes had a duty to maintain the secrecy of Philips' Trade Secrets and to act in good faith and with loyalty towards Philips.

59.    In violation of his duties and Philips' rights, Hayes knowingly, willfully and maliciously misappropriated Philips' Trade Secrets by downloading, printing and otherwise knowingly improperly accessing and acquiring Philips' Trade Secrets shortly prior to his resignation from Philips and for purposes of taking said Trade Secrets with him to his new employer, GE Healthcare, for the benefit of GE Healthcare and himself in his new role.

60.    Upon information and belief, after commencing employment with GE Healthcare in 2020, Hayes also used or disclosed Philips' Trade Secrets for the benefit of himself and his new employer in his new competitive role with GE Healthcare, and without Philips' consent to do so.

61.    As the direct and proximate result of Hayes' conduct, Philips has suffered and, if not stopped, will continue to suffer, irreparable injury and significant damages in an amount to be proven at trial, including but not limited to: a) actual damages caused by Hayes' misappropriation of the Trade Secrets; b) unjust enrichment arising from Hayes' misappropriation; c) an award of exemplary damages for Hayes' willful and malicious misconduct; and d) an award of attorney's fees..

62.    Because Philips' remedy at law is inadequate, Philips also seeks injunctive relief to recover and protect its Trade Secrets and other legitimate business interests.

## Court III:
## Breach of Contract under Maryland Law

63.    Philips repeats and realleges each and every allegation of the foregoing paragraphs as if fully set forth herein.

64.     Hayes' Proprietary Information Agreement is a valid and enforceable contract supported by adequate consideration.

65.     Given Philips' legitimate and protectable interests in protecting its property, secret, confidential or proprietary information or data and business relationships, and in consideration of Hayes accepting and continuing at will employment with Philips, by virtue of which he gained access to Philips' Trade Secrets and other confidential information, the provisions of the Proprietary Information Agreement are reasonable, do not impose undue hardship on Hayes, do not disregard the public interest, and are otherwise enforceable.

66.     In the Proprietary Information Agreement, Hayes acknowledged that Philips has valuable, legitimate and protectable business interests in protecting its property, secret, confidential or proprietary information or data and relationships with its customers and third-parties and agreed in perpetuity not to use, publish or otherwise disclose any secret, confidential, or proprietary information or data of Philips, its customers or any other third party received by Philips in confidence.

67.     Hayes also agreed that at the conclusion of his employment with Philips he would return all written and other materials that relate to the business of Philips or its affiliates.

68.     Hayes breached these duties, and his Proprietary Information Agreement more generally, by downloading, printing and otherwise knowingly improperly accessing and acquiring Philips' Trade Secrets and other Philips confidential information shortly prior to his resignation from Philips and for purposes of taking said information with him to his new employer, GE Healthcare, for the benefit of himself and GE Healthcare and by failing to return that information to Philips.

69.     Upon information and belief, Hayes also breached his contractual duties by using or disclosing Philips' Trade Secrets for the benefit of himself and his new employer in his new role with GE Healthcare, and without Philips' consent to do so.

70.     As the direct and proximate result of Hayes' breaches, Philips has suffered and, if not stopped, will continue to suffer, irreparable injury and significant damages, in an amount to be proven at trial.

71.     Because Philips' remedy at law is inadequate, Philips also seeks injunctive relief to recover and protect its Trade Secrets and other legitimate business interests.

**Count IV:**
**Breach of Duty of Loyalty under Maryland Law**

72.      Philips repeats and realleges each and every allegation of the foregoing paragraphs as if fully set forth herein.

73.     As a high-level Philips employee in the role of Vice President of Philips' North American MR sales organization who had access to Philips' Trade Secrets and other confidential information, Hayes owed a duty of good faith and loyalty to Philips.

74.     In violation of his duty of loyalty, and in violation of Philips' rights, Hayes knowingly downloaded, printed and otherwise accessed Philips' Trade Secrets and other confidential information shortly prior to his resignation from Philips and for purposes of taking said trade secrets and confidential information with him to his new employer, GE Healthcare, for the benefit of GE Healthcare and himself in his new role which was competitive with Philips in the field of MR equipment sales.

75.     As the direct and proximate result of Hayes' conduct, Philips has suffered and, if not stopped, will continue to suffer, irreparable injury and significant damages, in an amount to be proven at trial.

76.     Because Philips' remedy at law is inadequate, Philips also seeks injunctive relief to recover and protect its Trade Secrets and other legitimate business interests.

**Count V:**
**Tortious Interference with Prospective Economic Advantage under Maryland Law**

77.     Philips repeats and realleges each and every allegation of the foregoing paragraphs as if fully set forth herein.

78.     In bad faith, and with the willful intention of using Philips' Trade Secrets and other confidential information for his own benefit and the benefit of his new employer, GE Healthcare, during the final weeks of his employment with Philips, Hayes accessed, printed and downloaded said information, including Philips' product and customer sales information, which is not publicly available and which Philips exerts substantial resources to keep confidential and secret.

79.     Upon information and belief, since leaving Philips and resuming work for GE Healthcare, Hayes has used Philips' Trade Secrets and other confidential information which he wrongfully and unfairly accessed to interfere with Philips' relationships with its customers and with the prospective economic advantage of pending, completed and future sales to those customers.

80.     Hayes' conduct of improperly accessing and retaining Philips' Trade Secrets and other confidential information and using that information to compete against Philips on behalf of his new employer, GE Healthcare, was done knowingly and within the purpose of unlawfully benefiting himself and GE Healthcare, while causing Philips business loss and damage.

81.     Hayes had no right or privilege to engage in the aforesaid conduct.

82.     Moreover, as the direct and proximate result of Hayes' conduct, Philips has suffered and, if not stopped, will continue to suffer, irreparable injury and significant damages, in an amount to be proven at trial.

## Count VI:
## Unfair Competition under Maryland law

83.     Philips repeats and realleges each and every allegation of the foregoing paragraphs as if fully set forth herein.

84.     In bad faith, and with the intention of using Philips' Trade Secrets and other confidential information for his own benefit and the benefit of his new employer, GE Healthcare, during the final weeks of his employment with Philips, Hayes accessed, printed and downloaded said information, including Philips' product and customer sales information, which is not publicly available and which Philips exerts resources to keep confidential and secret.

85.     Since leaving Philips and beginning to work for GE Healthcare, upon information and belief, Hayes has used Philips' Trade Secrets and other confidential information, which he wrongfully and unfairly accessed, to attempt to solicit at least one of Philips' customers.

86.     Hayes' conduct substantially interferes with Philips' ability to compete with GE Healthcare on the merits of their products or otherwise conflicts with accepted principles of public policy recognized by statute or common law and thus gives rise to a claim for unfair competition under Maryland law.

87.     As the direct and proximate result of Hayes' conduct, Philips has suffered and, if not stopped, will continue to suffer, irreparable injury and significant damages, in an amount to be proven at trial.

WHEREFORE, Philips respectfully requests that the Court:

1.     Enter judgment in favor of Philips and against Hayes;

2.     Preliminarily and permanently enjoin Hayes from further breaches of his Proprietary Information Agreement;

3.     Order Hayes to preserve all evidence relating to the allegations of this Complaint;

16

4.      Award Philips all direct and incidental damages incurred as a result of unlawful conduct to date;

5.      Award Philips restitution in the amount of all unjust enrichment gained by Hayes as a result of his breaches of his duty of loyalty;

6.      Award Philips all punitive and exemplary damages allowable by law; and

7.      Award Philips interest, costs of suit, including attorney's fees to the extent allowable by law; and all such other relief as the Court deems just and proper.

Dated: June 3, 2020                          Respectfully Submitted,

                                             PHILIPS NORTH AMERICA LLC


                                             By:        /s/ *Adam T. Simons*
                                                     Adam T. Simons
                                                     Fed. Bar No.29357
                                                     McGuireWoods LLP
                                                     500 East Pratt St #1000
                                                     Baltimore, MD 21202
                                                     (410) 659-4400
                                                     asimons@mcguirewoods.com

                                                     Michael R. Phillips (*pro hac vice* to be filed)
                                                     Katharine P. Lennox (*pro hac vice* to be filed)
                                                     McGuireWoods LLP
                                                     77 West Wacker Drive
                                                     Suite 4100
                                                     Chicago, Illinois 60601-1815
                                                     (312) 849-8100
                                                     (312) 849-3690 (fax)