IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

PHILIPS NORTH AMERICA LLC
*Plaintiff*

v.                                         Civil Action No. ELH-20-1409

STEVEN HAYES
*Defendant.*

**MEMORANDUM OPINION**

Plaintiff Philips North America LLC ("Philips"), which manufactures and sells medical equipment, filed suit against its former employee, defendant Steven Hayes, alleging misappropriation of confidential information. ECF 1 (the "Complaint"). Hayes, who worked for Philips from July 24, 2017 until January 6, 2020, is allegedly using plaintiff's confidential information to solicit Philips' customers to his current employer, GE Healthcare, a direct competitor of plaintiff, in violation of his employment agreement with Philips as well as federal and State law. *Id.* ¶¶ 3-5. The suit is supported by one exhibit. ECF 1-2.

The Complaint contains six counts: violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836 ("DTSA") (Count I); violation of the Maryland Uniform Trade Secrets Act, Md. Code (2013 Repl. Vol), § 11-1201 *et seq*. of the Commercial Law Article ("C.L.") ("MUTSA") (Count II); breach of contract (Count III); breach of duty of loyalty (Count IV); "Tortious Interference with Prospective Economic Advantage under Maryland Law" (Count V); and unfair competition (Count VI). ECF 1 at 10-16.[1]

---

[1] Plaintiff asserts jurisdiction based on diversity, 28 U.S.C. § 1332; federal question jurisdiction pursuant to the Defend Trade Secrets Act, 18 U.S.C. § 1836(c), and 28 U.S.C. §§ 1331, 1338; and supplemental jurisdiction under 28 U.S.C. § 1367(a). ECF 1, ¶¶ 8-10.

Hayes has moved to dismiss the Complaint for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6).   ECF 7.   The motion is supported by a memorandum of law.   ECF 7-1 (collectively, the "Motion").   Plaintiff opposes the Motion.   ECF 10 (the "Opposition").   Defendant has replied.   ECF 13 (the "Reply").

No hearing is necessary to resolve the motion.   *See* Local Rule 105.6.   For the reasons that follow, I shall deny the Motion.

## I.   Factual Background[2]

Philips is a Delaware corporation with its principal place of business in Cambridge, Massachusetts.   It manufactures magnetic resonance ("MR") imaging scanners and sells "medical equipment, devices and technology to health care systems and providers throughout the United States."   ECF 1, ¶ 5.

Hayes began working for Philips as "Sales, Senior Director – Market Business Manager, MR" on July 24, 2017.   *Id.* ¶ 6.   He subsequently served as the Vice President and North American market leader of Philips' MR division until his departure from Philips.   *Id.*   In both of these roles, "Hayes served as a leader in Philips' MR sales organization," which "leads Philips' efforts to market its MR equipment to hospitals, medical centers and other customers."   *Id.* ¶¶ 15, 16.   He was considered a "high-level employee."   *Id.* ¶ 21.

According to Philips, the sales process for MR equipment is "highly complex," "time-consuming," and the "market is highly competitive."   *Id.* ¶¶ 17, 18.   Each piece of MR equipment is custom manufactured to the customer's specifications and may generate over $1 million in

---

[2] Given the posture of the case, I must assume the truth of all factual allegations in the Complaint.   *See Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019).   However, the Court can "take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'"   *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015).

revenue. *Id.* ¶ 17. As a result of the high cost and complexity of the equipment, there are a limited number of global manufacturers, including both Philips and GE Healthcare, regularly competing for the same customers. *Id.* ¶ 18, 19. These customers include "hospitals, medical centers and imaging centers with large capital equipment budgets who are generally affiliated with major health systems or research institutions." *Id.* ¶ 19.

On July 24, 2017, Philips and Hayes executed an "Employee Ethics and Intellectual Property Agreement." *Id.* ¶ 13; *see* ECF 1-2 (the "Agreement"). The Agreement does not contain an expiration date. ECF 1-2 at 1. According to the text of the Agreement, it "supersedes, replaces, and governs any similar agreement executed by [Hayes]." *Id.* In addition, the "agreement may not be modified, amended or terminated, in whole or in part, except in written agreement signed by an authorized representative of the company." *Id.*

The Agreement addresses the use and disclosure of Philips' proprietary trade information. *Id.* In pertinent part, the Agreement provides that Hayes, as an at-will employee of Philips, agreed, ECF 1-2 at 1:

1. Not to use, publish or otherwise disclose (except as my job requires) either during or after my employment, any secret or confidential (proprietary) information or data of the company or its customers or any other third party received by the company in confidence.

2. Upon the termination of my employment, to deliver promptly to the company all written and other material that relate to the business of the company or its affiliates including, without limitation, computers, laptops, hand-held computers and cell phones.

Because of defendant's role in overseeing Philips' MR sales organization, Philips allegedly "entrusted Hayes with a considerable amount of secret, confidential and proprietary information." *Id.* ¶ 20. This information included "MR equipment manufacturing information, national product supply funnel information, business and strategic plans, marketing, account strategies, pricing,

national orders and sales, and relationships with customers and clients, and other proprietary
Philips material." *Id.* ¶ 21.  Further, Hayes had information on "pending, potential or completed
sales to specific customers" and got regular updates from the field on the status of sales efforts.
*Id.* ¶ 22.  And, Hayes received "regular reports" on the manufacturing status of customized MR
equipment for completed sales.  *Id.* ¶ 23.  In addition to having access to this information, Hayes
was also "directly involved" with "pricing of the equipment" and, in developing Philips' MR sales
and marketing strategy.  *Id.* ¶¶ 22-23.

According to plaintiff, Philips' "secret, confidential and proprietary information" is
"extremely valuable" because the information is "difficult, costly, and time-consuming to
develop."  *Id.* ¶ 24.  It is "only known to a select group of people"; it is "not made public"; and it
"cannot be independently ascertained through proper means."  *Id.*  Plaintiff claims that, by signing
the Agreement, "Hayes acknowledged that Philips has valuable, legitimate and protectable
business interests in protecting its property, secret, confidential or proprietary information or data
and relationship with its customer and third parties."  *Id.* ¶ 13.

Philips contends that the trade secrets have "great independent economic value" to both
Philips and its competitors.  *Id.* ¶ 26.  According to plaintiff, its trade secrets give it a "competitive
advantage in the sales and marketing of MR products" because they "provide product, profit
margin and supply chain insight," and "customer-specific account strategy and history."  *Id.* ¶ 26.
And, plaintiff alleges, Hayes was aware of the value of the information to which he had access.
*Id.* ¶ 24.

Moreover, Philips exercises "reasonable efforts to preserve" the secrecy of its trade secrets.
*Id.* ¶ 25.  For example, Philips requires employees, like Hayes, to sign agreements to protect its
trade secrets, "limits dissemination" of trade secret information within Philips, and "spends

considerable resources on internal information technology security programs, features and systems to safeguard against employees improperly accessing, exporting and retaining its trade secrets." *Id.*

In the Fall of 2019, while Hayes was serving as Vice President and North American market leader of Philips' MR division, he began communicating with GE Healthcare regarding an executive level role in GE Healthcare's MR division. *Id.* ¶ 27. GE Healthcare is a "direct competitor" of Philips. *Id.* ¶ 3. On November 19, 2019, GE Healthcare offered Hayes the position of "National Modality Leader for MR Equipment" and Hayes currently serves in that role. *Id.* ¶¶ 3, 4, 28. The role, plaintiff alleges, "is substantially similar to Hayes' Vice President role with Philips." *Id.* ¶ 28. Hayes accepted GE Healthcare's employment offer the following day. *Id.* ¶ 29. At that time, Philips did not know Hayes was communicating with GE Healthcare or that he had accepted an offer with that company. *Id.* ¶¶ 27, 29.

Hayes informed Philips of his decision to take the job at GE Healthcare on January 6, 2020. *Id.* ¶ 29. He terminated his employment with Phillips on that date. *Id.* ¶ 6. And, before Hayes accepted employment with Philips, he had worked for GE Healthcare, first as an MR sales specialist from 2008 to 2013, and then as a Senior Strategic Business Leader for MR sales from September 2014 through August 2017. *Id.* ¶¶ 3, 7.

According to plaintiff, Hayes waited six weeks to inform Philips of his decision because Hayes knew that "informing Philips that he had accepted a job with a competitor would have resulted in his immediate termination or, at the very least, in Philips making efforts to shield its sensitive and confidential business information from him." *Id.* ¶ 29. In addition, plaintiff alleges that Hayes used this six-week period to access, acquire, and retain trade secrets and confidential data from Philips prior to his departure. *Id.* ¶¶ 30, 31.

A forensic search of Hayes's Philips-issued computer revealed that Hayes printed about 40 documents from Philips' computer system containing alleged trade secrets. *Id.* ¶ 32. These documents were allegedly printed in series on days leading up to Hayes' departure from Philips, including on December 10, December 11, December 16, and December 30 of 2019. *Id.* Philips also alleges that Hayes "accessed about 25 confidential documents from Philips' document system" in succession over several days during the same time period. *Id.* ¶ 34. The documents that Hayes printed or accessed during this period allegedly contained Philips' business plans for 2019 and 2020; lists of pending orders and sales funnels for the United States; information regarding manufacturing status of completed sales; presentations regarding Philips' market initiatives; marketing and strategic plans; and information regarding specific Philips customers, orders, pricing, and sales initiatives. *Id.* ¶ 38.

Plaintiff maintains that "there was no legitimate business reason for Hayes to have printed or accessed all of these documents" during the period preceding his departure from Philips. *Id.* ¶ 40. In fact, plaintiff contends, the spreadsheets and presentations that Hayes printed would "normally be accessed electronically rather than in printed form" because they are "cumbersome to print or use in hard copy." *Id.* Moreover, Hayes has not returned any of the documents to Philips. *Id.* ¶ 33.

In addition, the forensic analysis revealed that Hayes attempted to connect a flash drive to his Philips computer on January 2, 2020, and at other "undetermined times," but Philips' Information Security Features blocked Hayes from transferring the data. *Id.* ¶¶ 35, 36. Plaintiff maintains that Hayes was planning to use the flash drive to download and retain additional confidential information from Philips. *Id.* ¶ 36. According to plaintiff, Hayes had previously

successfully used a flash drive to save documents containing Philips' data, and Hayes accessed these documents after leaving Philips. *Id.* ¶ 39.

Philips alleges that since Hayes began working for GE Healthcare, he has "*used* Philips' Trade Secrets and other confidential business information to compete against Philips." *Id.* ¶ 42 (emphasis in original). In particular, Philips claims that Hayes was "involved in soliciting, on GE Healthcare's behalf, a large health system customer with whom Hayes worked while at Philips." *Id.* ¶ 43. Philips contends that several of the documents that Hayes printed or accessed during his last weeks at Philips "related specifically to" this customer and "describe pending or potential Philips sales to this customer." *Id.* Philips adds that "Hayes was involved in pricing of substantial pending sales to this customer, even during the last week of his employment with Philips," so he "had knowledge of Philips' pricing and gross margins on those sales and how GE Healthcare could undercut these margins in order to secure the customer's business." *Id.*

## II.   Standard of Review

### A.   Rule 12(b)(6)

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6). *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). It provides that a complaint must contain a "short and

plain statement of the claim showing that the pleader is entitled to relief."  The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ."); *see also Fauconier v. Clarke*, 996 F.3d 265, 276 (4th Cir. 2020); *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019); *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017).  To be sure, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2).  *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted."  *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 10 (2014) (per curiam).  But, mere "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief.  *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted).

In other words, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013).  If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient.  *Twombly*, 550 U.S. at 555.  "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim of relief.  *Iqbal*, 556 U.S. at 678.  Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote

8

and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co.*, 637 F.3d at 440 (citations omitted); *see Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). But, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Glassman v. Arlington Cty.*, 628 F.3d 140, 146 (4th Cir. 2010). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Courts ordinarily do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses'" through a Rule 12(b)(6) motion. *Edwards*, 178 F.3d at 243 (quoting *Republican Party v. Martin,* 980 F.2d 943, 952 (4th Cir. 1992)). However, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan,* 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst,* 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint.*'" *Goodman,* 494 F.3d at

9

464 (quoting *Forst,* 4 F.3d at 250) (emphasis added in *Goodman*).

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448). Ordinarily, the court "may not consider any documents that are outside of the complaint, or not expressly incorporated therein . . . ." *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013); *see Bosiger v. U.S. Airways, Inc.*, 510 F.3d 442, 450 (4th Cir. 2007).

But, under limited circumstances, when resolving a Rule 12(b)(6) motion, a court may consider documents beyond the complaint without converting the motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015). In particular, a court may properly consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits." *Goines*, 822 F.3d at 166 (citation omitted); *see also Six v. Generations Fed. Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Goines*, 822 F.3d at 167 (citing *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 455 (7th Cir. 1998)).  Of import here, "[w]hen the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff

has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Goines*, 822 F.3d at 167.  Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id.*

A court may also "consider a document submitted by the movant that [is] not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines*, 822 F.3d at 166 (citations omitted); *see also Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017), *cert. denied*, __ U.S. __, 138 S. Ct. 558 (2017); *Oberg*, 745 F.3d at 136; *Kensington Volunteer Fire Dep't. v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012).  To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in original).  *See also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

In addition, "a court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Goldfarb*, 791 F.3d at 508; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.,* 637 F.3d 462, 466 (4th Cir. 2011), *cert. denied*, 565 U.S. 825 (2011); *Philips v. Pitt Cty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).  However, under Fed. R. Evid. 201, a court may take judicial notice of adjudicative facts only if they are "not subject to reasonable dispute," in that they are "(1) generally known within the territorial

11

jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

One exhibit is attached to the Complaint: the Employee Ethics and Intellectual Property Agreement (ECF 1-2). The Agreement is specifically referenced in the Complaint. *See* ECF 1, ¶ 14. Accordingly, at this juncture, I may consider the Agreement, without converting the Motion to one for summary judgment.

### B.  Choice of Law

The parties assume, without discussion, that Maryland law applies to the claims under State law. "When choosing the applicable state substantive law while exercising diversity or supplemental jurisdiction, a federal district court applies the choice of law rules of the forum state." *Ground Zero Museum Workshop v. Wilson*, 813 F. Supp. 2d 678, 696 (D. Md. 2011); *see also Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 275 (4th Cir. 2007); *Baker v. Antwerpen Motorcars, Ltd.*, 807 F. Supp. 2d 386, 389 n.13 (D. Md. 2011).

Regarding tort claims, Maryland applies the law of the state where the alleged harm occurred ("*lex loci delicti*"). *See, e.g.*, *Proctor v. Washington Metropolitan Area Transit Auth.*, 412 Md. 691, 726, 990 A.2d 1048, 1068 (2010); *Erie Ins. Exch. v. Heffernan*, 399 Md. 598, 625, 925 A.2d 636, 651 (2007); *Phillip Morris, Inc. v. Angeletti*, 358 Md. 689, 744, 752 A.2d 200, 230 (2000). Because the alleged events took place in Maryland, the substantive tort law of Maryland governs any tort claims. *See Hauch v. Connor*, 295 Md. 120, 123-24, 453 A.2d 1207, 1209 (1983).

As for the contract claim, "interpretation of private contracts is ordinarily a question of state law." *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 474 (1989); *accord James v. Circuit City Stores, Inc.*, 370 F.3d 417, 421-22 (4th Cir. 2004). Therefore, because Maryland is the forum state, I must apply Maryland substantive law, including

its choice of law rules, to determine which state's substantive law applies to the agreement. *Small v. WellDyne, Inc*., 927 F.3d 169, 173 n.3 (4th Cir. 2019); *Francis v. Allstate Ins. Co*., 709 F.3d 362, 369 (4th Cir. 2013); *CACI Int'l, Inc. v. St. Paul Fire & Marine Ins. Co*., 566 F.3d 150, 154 (4th Cir. 2009).

Maryland applies the law of the state in which the contract was formed ("*lex loci contractus*"), unless the parties to the contract agreed to be bound by the law of another state. *See, e.g. Cunningham v. Feinberg*, 441 Md. 310, 326, 107 A.3d 1194, 1204 (2015); *Erie Ins. Exch. v. Heffernan*, 399 Md. 598, 618, 925 A.2d 636, 648 (2007); *Am. Motorists Ins. Co. v. ARTRA Grp., Inc.*, 338 Md. 560, 573, 659 A.2d 1295, 1301 (1995); *TIG Ins. Co. v. Monongahela Power Co.*, 209 Md. App. 146, 161, 58 A.3d 497, 507 (2012), *aff'd*, 437 Md. 372, 86 A.3d 1245 (2014). "For choice-of-law purposes, a contract is made where the last act necessary to make the contract binding occurs." *Konover Prop. Tr., Inc. v. WHE Assocs.*, 142 Md. App. 476, 490, 790 A.2d 720, 728 (2002) (citing *Commercial Union Ins. Co. v. Porter Hayden Co.*, 116 Md. App. 605, 672, 698 A.2d 1167, 1200 (1997), *cert. denied*, 348 Md. 205, 703 A.2d 147 (1997)). It appears that the contract was signed in Maryland and does not contain a choice of law clause. *See* ECF 1-2.

For these reasons, and because neither side suggests otherwise, I shall apply Maryland law with respect to plaintiff's contract and tort claims.

### III.   Discussion

### A.  Trade Secrets (Counts I and II)

In Counts I and II, plaintiff lodges claims against Hayes for the misappropriation of trade secrets under the DTSA and the MUTSA. ECF 1 at 10-12. Defendant urges the Court to dismiss both claims because Philips fails to allege that the information at issue qualifies as a trade secret or was improperly acquired. ECF 7-1 at 4.

13

As both parties note, the majority of the elements of a misappropriation claim under the DTSA and the MUTSA are substantively the same. To establish a claim under the DTSA or the MUTSA, a plaintiff must show that the documents at issue are trade secrets and that the defendant misappropriated those trade secrets. *See* 18 U.S.C. § 1836(b)(1); C.L. §§ 11-1201 to 11-1203.

More specifically, to prevail on a misappropriation claim under the DTSA, the plaintiff must allege: (1) it owns a trade secret which was subject to reasonable measures of secrecy; (2) the trade secret was misappropriated by improper means; and (3) the trade secret implicates interstate or foreign commerce. 18 U.S.C. § 1836(b)(1). And, under the MUTSA, a plaintiff must establish that "(1) it possessed a valid trade secret, (2) the defendant acquired its trade secret, and (3) the defendant knew or should have known that the trade secret was acquired by improper means." *Trandes Corp. v. Guy F. Atkinson Co*., 996 F.2d 655, 660 (4th Cir. 1993) (citing C.L. § 11-1201(c)(1)); *Airfacts, Inc. v. de Amezaga*, 909 F.3d 84, 95 (4th Cir. 2018).

The primary difference between the MUTSA and the DTSA is that the DTSA only allows for a private cause of action where the alleged trade secrets are "related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1).

### 1.  Trade Secrets

The DTSA and the MUTSA define a trade secret in "substantially the same manner." *Md. Physician's Edge, LLC v. Behram*, DKC-17-2756, 2019 WL 4573417, at *5 (D. Md. Sept. 20, 2019). Specifically, a "trade secret" includes all forms and types of financial, business, or economic information if (1) the owner has taken reasonable measures to keep such information secret; and (2) the information derives independent economic value, actual or potential, from not being generally known to another person in the relevant industry, and not being readily ascertainable through proper means. *See* 18 U.S.C. § 1839(3); C.L. § 11-1201(e).

14

Philips alleges that the files and documents that Hayes had in his possession were confidential, proprietary items that meet the definition of "trade secrets." ECF 1, ¶¶ 46-49, 55-57. According to Philips, the records to which Hayes had access generally include "MR equipment manufacturing information, national product supply funnel information, business and strategic plans, marketing, account strategies, pricing, national orders and sales, and relationships with customers and clients." *Id.* ¶ 21. And, as noted, the documents that Hayes allegedly acquired and retained include Philips' "business plans for 2019 and 2020, lists of pending orders and sales funnels for the entire United States, information regarding manufacturing status of completed sales, presentations regarding new Philips market initiatives, marketing and strategic plans and detailed information regarding specific Philips customers, orders, pricing and sales initiatives." *Id.* ¶ 38.

In response, defendant insists that the records at issue are not trade secrets because the records do not derive independent economic value from their confidentiality. ECF 7-1 at 9-10. And, he claims that Philips failed to make reasonable efforts to protect the secrecy of the information. *Id.* at 8-9.

"In a competition for sales, information about potential customers and their buying habits, a competitor's pricing, business strategies, and vendors is a windfall, granting the recipient a key to undercut the competition's pricing, outbid their vendor contracts, and attract their customers." *Albert S. Smyth Co., Inc. v. Motes*, CCB-17-677, 2018 WL 3635024, at *4 (D. Md. July 31, 2018) (finding documents containing customer lists, pricing sheets, and business strategies to be trade secrets); *see MCS Services, Inc. v. Jones*, WMN-10-1042, 2010 WL 3895380, at *7 (D. Md. Oct. 1, 2010) (finding customer lists have independent economic value where company exerted resources to create lists and company's competitors could use list to undercut company's prices).

15

Maryland courts have repeatedly found that business plans, pricing and cost information, and customers lists for companies operating in competitive sales industries derive independent economic value from their confidentiality. *See, e.g.*, *LeJeune v. Coin Acceptors, Inc.*, 381 Md. 288, 309-10, 849 A.2d 451, 463-64 (2004) (finding pricing information that disclosed an employer's manufacturing costs and profit margins were trade secrets because of the "unique, competitive nature of the currency acceptor industry"); *PADCO Advisors, Inc. v. Omdahl*, 179 F. Supp. 2d 600 (D. Md. 2002) (mutual fund customer list qualified as a trade secret; information not ascertainable by competitors had economic value because the information helped the company develop new products, and the company guarded the secrecy of database by limiting its availability and protecting it with passwords and firewalls).

To be sure, as defendant notes, courts have found that financial information and marketing strategies do not always qualify as trade secrets, particularly when they are "subject to change" or "readily available from the marketplace." *Optic Graphics, Inc. v. Agee*, 87 Md. App. 770, 787-88, 591 A.2d 578, 587 (1991).  Therefore, courts will look to whether the employer has invested time and resources into the development of the customer information.  *Ameritox, Ltd. v. Savelich*, 92 F. Supp. 3d 389, 402 (D. Md. 2015) (customer information qualified as a trade secret because company invested resources to develop the information and maintain its secrecy)*; see also PADCO Advisors, Inc.*, 179 F. Supp. 2d at 610.  But, a business plan may still constitute a trade secret, even if some aspects of the plan are public, as long as the business plan also includes a compilation of "personal insights and analysis."  *Motor City Bagels v. Am. Bagel Co.*, 50 F. Supp. 2d 460, 478-79 (D. Md. 1999) (finding a company's business plan was a trade secret because it included "personal insights and analysis brought to bear through diligent research and by marshaling a large volume of information").

16

The decision of the Maryland Court of Appeals in *LeJeune*, 381 Md. 288, 849 A.2d 451, is instructive.  In that case, a company that manufactured currency acceptance machines alleged that its budgeting software, strategic marketing plan, pricing and cost information, service pricing information, and detailed specifications for models of machinery constituted trade secrets. *LeJeune*, 381 Md. at 309, 849 A.2d at 464.  The court noted that the documents at issue contained "a vast amount of information related to [the company's] manufacturing costs and profit margins" and "the currency acceptor industry is highly competitive."  *Id.*  As a result, a competitor could undercut the company's prices if it acquired the information.  *Id.*  Additionally, the company's competitor could "improve the commercial value of its own products" if it acquired the company's manufacturing specifications.  *Id.*  Therefore, the court concluded that the documents had independent economic value sufficient to qualify as trade secrets.  *Id.; see also PADCO Advisors, Inc.*, 179 F. Supp. 2d at 610 (noting competitor would derive economic value from company's customer list because only three companies competed in mutual fund market).

The case here resembles the situations in *LeJeune* and *PADCO*.  Similar to the companies in those cases, Philips alleges that it had compiled a significant amount of information that was "difficult, costly, and time-consuming to develop."  ECF 1, ¶¶ 17, 24.  Moreover, like the mutual fund market in *PADCO* and the currency acceptance machine industry in *LeJeune*, the MR equipment market is allegedly "highly competitive" and dominated by a "limited number of global manufacturers."  ECF 1, ¶ 18.  Therefore, Philips' marketing strategies and pricing and customer information, if available to a competitor such as GE Healthcare, could allow GE Healthcare to undercut Philips' pricing and gain an economic advantage.  In addition, because of the complex nature of the MR manufacturing process (ECF 1, ¶ 17), Philips' MR manufacturing information could also have economic value to a competitor.

Further, Philips alleges that it took reasonable steps to protect its proprietary information. Its employees are bound by Philips' "Employee Ethics and Intellectual Property Agreement," which prohibits employees from disclosing confidential information and requires them to return all company materials upon termination of employment. ECF 1-2. Philips also alleges that it has "spent considerable resources on information technology security programs, features and systems to safeguard against employees improperly accessing, exporting and retaining Philips' Trade Secrets." ECF 1, ¶ 25. Indeed, Philips' security system thwarted Hayes' attempt to transfer documents to a flash drive before his departure from Philips in January 2020. *Id.* ¶ 35. *Compare Motor City Bagels*, 50 F. Supp. 2d at 480 (finding that the plaintiff failed to take reasonable security measures because it gave its business plan to third parties without requiring them to execute a confidentiality agreement); *Montgomery Cty. Ass'n of Realtors, Inc. v. Realty Photo Master Corp.*, 878 F. Supp. 804, 814 (D. Md. 1995) (holding that a realtor association failed to take reasonable security measures because it distributed information in its database widely to its members and potential purchasers).

The fact that employees like Hayes were authorized to access and download the alleged trade secrets and confidential information does not alter the conclusion. Hayes specifically had access to these documents because he was a high-level employee. ECF 1, ¶ 21. *See Brightview Grp., LP v. Teeters*, 441 F. Supp. 3d. 115, 130 (D. Md. 2020) (confidentiality policy and restricted internal access likely sufficient to constitute reasonably security measures even if some employees could access and download trade secrets onto personal storage devices and other employees ignored confidentiality measures); *Albert S. Smyth Co., Inc.*, 2018 WL 3635024 at *4 (finding company took reasonable measures where plaintiff alleged that employees were prohibited from disclosing company information, employee access to documents was limited, and documents were

18

stored on secure servers protected by firewalls).

Therefore, I am satisfied that Philips has adequately alleged that the documents at issue qualify as trade secrets pursuant to the MUTSA and the DTSA.

### 2. Misappropriation

After demonstrating an item is a trade secret, a plaintiff must show that the defendant has misappropriated it. *Trandes*, 996 F.2d at 660. A trade secret is misappropriated if it was acquired: (1) by a person who knows that the trade secret was acquired by improper means, or (2) by a person who uses or discloses the trade secret after acquiring it through improper means. 18 U.S.C. § 1839(5)(A), (5)(B)(i); *see also* C.L. § 11-1201(c).

The DTSA provides that the "improper means" of acquiring a trade secret "includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." 18 U.S.C. § 1839(6)(A); *see also* C.L. § 11-1201(b). The MUTSA's definition of misappropriation and "improper means" again "mirrors the DTSA's definition." *Brightview Grp., LP*, 441 F. Supp. 3d at 132.

A claim for misappropriation lies "simply by demonstrating that the defendant acquired [the] trade secret by improper means, even if the plaintiff cannot show use of that trade secret." *Sys. 4, Inc. v. Landis & Dyr, Inc.*, 8 F. App'x 196, 200 (4th Cir. 2001). Simply put, "*acquisition* alone is enough to give rise to a" misappropriation claim. *Behram*, 2019 WL 4573417 at *5 (emphasis in original).

In the Motion, defendant argues that Hayes' actions cannot constitute misappropriation because he "acquired the information while he had permission to do so as a Philips employee." ECF 7-1 at 11. Moreover, Hayes contends that Philips did not allege that he had actually used or disclosed trade secrets. *Id.*

19

Plaintiff alleges that Hayes accessed, downloaded, and printed Philips' confidential documents after accepting a job offer with GE Healthcare, without any business justification for doing so, and that he acquired the documents through improper means, thereby misappropriating Philips' documents.  ECF 1, ¶¶ 28-29, 32, 39.  Moreover, according to plaintiff, Hayes failed to inform Philips of his competing role because he knew the value and confidential nature of the information and that Philips would have terminated him or at least barred him from access to certain files if he had informed Philips of his prospective employment with a competitor.  ECF 10 at 13-14.  And, Hayes failed to return these documents to Philips upon the termination of his employment with Philips, per the Agreement.  ECF 1, ¶ 33; ECF 1-2.  Moreover, Hayes misappropriated the documents when he allegedly accessed the documents after commencing employment with GE Healthcare (ECF 1, ¶ 39), and used them to solicit a customer of Philips.  ECF 1, ¶ 43.

Plaintiff's allegations are readily sufficient to constitute misappropriation under federal and State law.  S*ee Albert S. Smyth Co.*, 2018 WL 3635024 at *4 (finding allegations that defendant accessed trade secrets five times after he filed documents to open a competing business and several times after his employment was terminated sufficient to state a DTSA claim); *LeJeune*, 381 Md. at 314-15, 849 A.2d at 466-67 (holding, under the MUTSA, that transferring files to a personal computer for future personal use is misappropriation).

### 3.  Interstate Commerce

Defendant challenges whether the alleged trade secrets are "related to a product or service used in, or intended for use in, interstate or foreign commerce," so as to satisfy the final element of the DTSA.  18 U.S.C. § 1836(b)(1).  At the motion to dismiss stage, it is sufficient that Philips alleges that its MR sales business is both national and international.  As a result, the court may

easily infer that the purported information relates to services used and intended for use in interstate and foreign commerce. *See Albert S. Smyth Co.*, 2018 WL 3635024 at *3 (finding allegation that plaintiff does business over the internet sufficient for interstate commerce element of DTSA at motion to dismiss stage); *Space Sys./Loral, LLC v. Orbital ATK, Inc.*, 306 F. Supp. 3d 845, 854-55 (E.D. Va. 2018) ("purported information relates to services used and intended for use in interstate and foreign commerce because it contains business plans, procurement strategies and subcontractor and vendor relationships"); *Hawkins v. Fishbeck*, 30 F. Supp. 3d 650, 658 (W.D. Va. 2017) (holding that plaintiff satisfied interstate commerce element where trade secret contained information related to commerce with other developers, marking plans, and feedback with customers).

In sum, plaintiff has pled a plausible claim for violation of the MUTSA and the DTSA. Plaintiff's documents have economic value, they are not generally available to the public, and they have been kept secret. Further plaintiff adequately alleges that defendant improperly accessed and used the documents. Accordingly, defendant's Motion is denied as to Counts I and II.

### B. Breach of Contract (Count III)

In Count III, Philips asserts a breach of contract claim under Maryland law, alleging that, by taking trade secrets and confidential information from Philips and using it for his own benefit, defendant violated the Agreement. ECF 1, ¶¶ 63-71. Defendant concedes that a contractual relationship existed between Hayes and Philips, but contends that Philips failed sufficiently to plead the breach and damages elements of its contract claim. ECF 7-1 at 12-13.

Under Maryland law, the elements of a claim for breach of contract are "'contractual obligation, breach, and damages.'" *Tucker v. Specialized Loan Servicing, LLC*, 83 F. Supp. 3d 635, 655 (D. Md. 2015) (quoting *Kumar v. Dhanda,* 198 Md. App. 337, 344, 17 A.3d 744, 749

(2011)).  "To prevail in an action for breach of contract, a plaintiff must prove that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation." *Taylor v. NationsBank, N.A.,* 365 Md. 166, 175, 776 A.2d 645, 651 (2001); *see RRC Northeast, LLC v. BAA Maryland, Inc.,* 413 Md. 638, 658, 994 A.2d 430, 442 (2010).  In other words, "[i]t is the parties' agreement that ultimately determines whether there has been a breach." *Mathis v. Hargrove,* 166 Md. App. 286, 318-19, 888 A.2d 377, 396 (2005).

In *Polek v. J.P. Morgan Chase Bank, N.A.,* 424 Md. 333, 362, 36 A.3d 399, 416 (2012), the Maryland Court of Appeals said: "Maryland law requires that a plaintiff alleging a breach of contract 'must of necessity allege with certainty and definiteness *facts* showing a contractual obligation owed by the defendant to the plaintiff and a breach of that obligation by defendant.'" (citation omitted) (emphasis in original); *see also Robinson v. GEO Licensing Co., L.L.C.,* 173 F. Supp. 2d 419, 423 (D. Md. 2001).

Pursuant to the Agreement, Hayes agreed "[n]ot to use, publish or otherwise disclose (except as [his] job requires) either during or after [his] employment any secret or confidential (proprietary) information or data of the company or its customers…."  ECF 1-2 at 1.  Hayes also agreed that, "[u]pon the termination of [his] employment, to deliver promptly to the company all written and other materials that relate to the business of the company or its affiliates…." *Id.*

Philips has alleged that Hayes accessed and used confidential documents during and after his employment with Philips "for purposes of taking this information with him for the benefit of himself and his new employer," and thus "not for any of his Philips' job requirements."  ECF 1, ¶¶ 66, 68, 69.  Philips also alleged that Hayes failed to "return documents containing Philips' Trade Secrets and other confidential information." *Id.* ¶¶ 33, 68.  And, as a result, Philips contends that it has suffered "irreparable injury and significant damages."  ECF 1, ¶ 70.

22

Accordingly, plaintiff has stated a plausible claim for breach of contract.  Therefore, I shall deny defendant's Motion with respect to Count III.

### C.  Breach of Duty of Loyalty (Count IV)

In Count IV, Plaintiff asserts that Hayes, as a high-level Philips' employee, owed a "duty of good faith and loyalty to Philips." ECF 1, ¶ 73.  Philips alleges that Hayes breached that duty by taking trade secrets and confidential information and using them for his own benefit and at Philips' expense.  *Id.* ¶ 74.  In the Motion, defendant posits that he cannot be liable for a breach of his duty because Maryland does not recognize breach of fiduciary duty as an independent cause of action.  ECF 7-1 at 13; *see Kann v. Kann*, 344 Md. 689, 690 A.2d 509 (1997).  In the Reply, defendant concedes that Maryland may recognize a cause of action for breach of some types of fiduciary relationships, but not for an "at-will" employee like Hayes.  ECF 13 at 13 (citing *Plank v. Cherneski*, __ Md. __, No. 3, Sept. Term 2019, 2020 WL 3967980, at *20 (filed July 14, 2020)).  Defendant also tacks on an argument that plaintiff's claim is preempted by the MUTSA because the MUTSA is the exclusive remedy for actions concerning the misappropriation of trade secrets.  ECF 7-1 at 14.

"A fiduciary relationship exists when one party is under a duty to act or give advice for the benefit of another."  Paul Mark Sandler & James K. Archibald, Pleading Causes Of Action in Maryland § 3.209.A at 436 (4th ed. 2008) (citing Restatement (Second) of Torts § 874 cmt. a (1979); Restatement (Second) of Trusts § 2 cmt. b (1959)).  Moreover, "[o]ne who breaches his or her duty as a fiduciary may be liable under various causes of action to those harmed by the breach of that duty."  *Id.*

Until recently, courts have not entirely agreed on whether Maryland recognizes an independent cause of action for breach of fiduciary duty.  *Plank,* __ Md. __, 2020 WL 3967980 at *16.  In *Kann*, 344 Md. at 713, 690 A.2d at 521, the Maryland Court of Appeals said:

> [T]here is no universal or omnibus tort for the redress of breach of fiduciary duty by any and all fiduciaries. This does not mean that there is no claim or cause of action available for breach of fiduciary duty. Our holding means that identifying a breach of fiduciary duty will be the beginning of the analysis, and not its conclusion. Counsel are required to identify the particular fiduciary relationship involved, identify how it was breached, consider the remedies available, and select those remedies appropriate to the client's problem.

As noted, courts applying Maryland law have taken different views as to whether *Kann* permits a plaintiff to pursue a claim for breach of fiduciary duty. *Compare International Brotherhood of Teamsters v. Willis Corroon Corp.*, 369 Md. 724, 727 n.1, 801 A.2d 1050, 1052 n.1 (2002) ("In *Kann v. Kann*, 344 Md. 689, 713, 690 A.2d 509, 520–21 (1997), we pointed out that, although the breach of a fiduciary duty may give rise to one or more causes of action, in tort or in contract, Maryland does not recognize a separate tort action for breach of fiduciary duty.") *and Swedish Civil Aviation Administration v. Project Management Enterprises, Inc.*, 190 F. Supp. 2d 785, 801 (D. Md. 2002) (concluding that "there is no independent tort for breach of fiduciary duty in Maryland") *with Adobe Sys. Inc. v. Gardiner*, 300 F. Supp. 3d 718, 726 (D. Md. 2018) ("*Kann* just as clearly stated that such a claim could be asserted if it involved an identified fiduciary relationship and an identified breach.").

In July 2020, in *Plank v. Cherneski*, __ Md. __, 2020 WL 3967980, the Maryland Court of Appeals clarified its ruling in *Kann*. The court determined that a cause of action for breach of fiduciary duty *can be pleaded* in some circumstances. *Plank*, 2020 WL 3967980 at *20. Further, the court stated: "A breach of fiduciary duty may be actionable as an independent cause of action, but not every breach of fiduciary claim will entitle the plaintiff to damages at law, and the right to a trial by jury." *Id.* The court explained that, "to establish a breach of fiduciary duty as an independent cause of action, a plaintiff must show: '(i) the existence of a fiduciary relationship;

24

(ii) breach of the duty owed by the fiduciary to the beneficiary; and (iii) harm to the beneficiary.'" *Id.* (quoting *Froelich v. Erickson*, 96 F. Supp. 2d 507, 576 n.22 (D. Md. 2000)).

"The remedy for a breach is dependent upon the type of fiduciary relationship, and the remedies provided by law, whether by statute, common law, or contract." *Plank*, 2020 WL 3967980 at *20. Therefore, courts should "consider the nature of the fiduciary relationship and possible remedies afforded for a breach, on a case-by-case basis." *Id.* And, "[i]f a plaintiff describes a fiduciary relationship, identifies a breach, and requests a remedy historically recognized by statute, contract, or common law applicable to the specific type of fiduciary relationship and the specific breach is alleged, a court should permit the count to proceed." *Id.* Finally, of import here, "[t]he cause of action may be pleaded without limitation as to whether there is another viable cause of action to address the same conduct." *Id.*

Under Maryland law, every employment contract contains an "implied duty [of loyalty] that an employee act solely for the benefit of his employer in all matters within the scope of employment." *Maryland Metals Inc. v. Metzner*, 282 Md. 31, 38, 382 A.2d 564, 568 (1978); *see also Adobe Sys. Inc.*, 300 F. Supp. 3d at 727. In particular, an employee may be liable for a breach of fiduciary duty if he or she commits a "fraudulent, unfair, or otherwise wrongful act such as misappropriation of trade secrets, conspiracy to bring about mass resignation of key employees or interference with an employer's business opportunities." *EndoSurg Medical, Inc. v. EndoMaster, Inc.*, 71 F. Supp. 3d 525, 556 (D. Md. 2014) (citing *Maryland Metals, Inc.*, 282 Md. at 38-39, 382 A.2d at 568-69)). "The misuse of confidential information" can also constitute a breach of fiduciary duty. *Fundamental Admin. Servs., LLC v. Anderson*, JKB-13-1708, 2014 WL 5797125, at *3 (D. Md. Nov. 6, 2014) (citing *Dworkin v. Blumenthal*, 77 Md. App. 774, 779, 551 A.2d 947, 949 (1989)). Although an employee may be at "liberty to solicit his former employer's business

and employees" once the employment relationship ends, he is still prohibited from soliciting his former employer's customers through "misuse of his former employer's trade secrets or confidential information." *Maryland Metals, Inc.*, 282 Md. at 38, 383 A.2d at 568.

The facts in the Complaint adequately set forth that Hayes owed a fiduciary duty to Philips and that Hayes breached the duty during and after his employment with Philips. In particular, Philips alleges that Hayes owed Philips a "duty of good faith and loyalty by virtue of his employment relationship." ECF 10 at 22 (citing *Harbor Estates LLC v. Giannasca*, WMN-05-2033, 2006 WL 8456645, at *2 (D. Md. May 18, 2006)). And, Hayes allegedly breached his duty when he took Philips' trade secrets and other confidential information for the purpose of benefiting himself and GE Healthcare. ECF 1, ¶ 74. Further, Philips claims that Hayes's conduct has caused, and will continue to cause, financial harm to Philips. ECF 1, ¶¶ 42-44, 75; *see EndoSurg*, 71 F. Supp. 3d at 556 (denying motion to dismiss where employee misappropriated trade secrets and interfered with plaintiff's business relationships); *see also BEP, Inc. v. Atkinson*, 174 F. Supp. 2d 400, 405-7 (2001) (finding plaintiff stated claim of breach of fiduciary duty of loyalty where high-level employee diverted business from company).

Plaintiff alleges that defendant acquired not only plaintiff's trade secrets, but also "other confidential information" (ECF 1, ¶ 73), suggesting the confidential information is distinct from the trade secrets at issue under the MUTSA. *Structural Pres. Sys., LLC, v. Andrews*, MJG-12-1850, 2013 WL 3820023, at *5 (D. Md. July 23, 2013) (concluding that "claims based on Proprietary Information that is not a MUTSA trade secret…are not preempted by the MUTSA"); *see also Allstate Ins. Co. v. Warns*, CCB-11-1846, 2012 WL 681792, at *8 (D. Md. Feb. 29, 2012) (declining to address the relationship between the MUTSA and common law breach of fiduciary

26

duty claims at this "preliminary stage of the litigation"). Therefore, for the same reasons discussed with respect to Count VI, this claim is not preempted by the MUTSA claim.

Accordingly, I shall deny the Motion with respect to Count IV.

### D. Tortious Interference (Count V)

In Count V, plaintiff brings a claim for tortious interference with prospective economic advantage.[3] Plaintiff alleges that Hayes tortiously interfered with Philips' prospective economic advantage by using Philips' trade secrets and other confidential information "to interfere with Philips' relationship with its customers." ECF 10 at 24-26. As a direct result, Philips claims the company has and will continue to lose clients and business. *Id.*

In the Motion, defendant contends that the Complaint's conclusory allegations that Hayes interfered with Philips' prospective business relationships are insufficient to state a claim for tortious interference. ECF 7-1 at 14-16. Defendant also posits that plaintiff is merely converting a breach of contract claim into a tortious interference claim. *Id.* at 17.

The tort of intentional interference with contractual or business relations is "well-established in Maryland." *Macklin v. Robert Logan Assocs.*, 334 Md. 287, 296, 639 A.2d 112, 116 (1994). It requires plaintiff to prove "(1) intentional and willful acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) actual damage and loss resulting." *Kaser v. Fin. Prot. Mktg., Inc.*, 376 Md. 621,

---

[3] In Maryland, "tortious interference with prospective advantage" and "intentional interference with a business relationship" are two names for one tort. *See havePOWER, LLC v. General Electric Co.*, 183 F. Supp. 2d 779, 785 (D. Md.2002) (noting that the tort of tortious interference with prospective advantage "has come to be known" as "tortious interference with business relationships").

628-29, 831 A.2d 49, 53 (2003) (quoting *Willner v. Silverman*, 109 Md. 341, 355, 71 A. 962, 964 (1909)).

"In any tort action, the plaintiff must establish that the defendant's tortious conduct was a cause in fact of the injury for which compensation is sought." *Med. Mut. Liab. Soc. of Maryland v. B. Dixon Evander & Assocs., Inc.*, 339 Md. 41, 54-55, 660 A.2d 433, 439-40 (1995); *see also Peterson v. Underwood*, 258 Md. 9, 16-17, 264 A.2d 851, 855 (1970) (stating that "[c]ausation in fact is concerned with the . . . inquiry of whether defendant's conduct *actually* produced an injury"); *Abend v. Sieber*, 161 Md. 645, 649, 158 A. 63, 64 (1932).  Thus, "the burden is on the plaintiff to prove by a preponderance of the evidence that 'it is more probable than not that defendant's act caused his injury.'"  *Med. Mut. Liab. Soc.*, 339 Md. at 55, 660 A.2d at 440 (quoting *Fennell v. Southern Maryland Hosp.*, 320 Md. 776, 787, 580 A.2d 206, 211 (Md. 1990)).    In addition, the plaintiff must establish that any damages sought are a "natural, proximate and direct effect of the tortious misconduct." *Jones v. Malinowski*, 299 Md. 257, 269, 473 A.2d 429, 435 (1984).

Courts have identified "two general manifestations" of this tort.  *Macklin*, 334 Md. at 297, 639 A.2d at 117. The first manifestation is often described as "'inducing the breach of an existing contract,'" and the second, "more broadly, constitutes maliciously or wrongfully interfering with economic relationships in the absence of a breach of contract."  *Blondell*, 413 Md. at 125, 991 A.2d at 97 (citation omitted).  In other words, under Maryland law, one may claim tortious interference with a contract or, in the absence of a contract or breach of contract, one may claim tortious interference with business or economic relations.

Notably, liability will only attach to an interference that is either "wrongful or unlawful." *Travelers Indem. Co. v. Merling*, 326 Md. 329, 343, 605 A.2d 83, 90 (1992) (citation omitted);

*Gabaldoni v. Wash. Cnty. Hosp. Ass'n.*, 250 F.3d 255, 263 (4th Cir. 2001) (citing *Travelers*, 326 Md. at 343, 605 A.2d at 90)).  The Maryland Court of Appeals has provided an illustrative list of the "types of wrongful or unlawful acts that could form the basis" for the second manifestation of the tort.  *Berry & Gould v. Berry*, 360 Md. 142, 153, 757 A.2d 108, 113 (2000).  These include "'violence or intimidation, defamation, injurious falsehood or other fraud, violation of criminal law, and the institution or threat of groundless civil suits or criminal prosecutions in bad faith.'" *Id.* (quoting *Alexander & Alexander, Inc. v. B. Dixon Evander & Assocs., Inc.*, 336 Md. 635, 657, 650 A.2d 260, 271 (1994)).  Moreover, "to establish causation in a wrongful interference action, the plaintiff must prove that the defendant's wrongful or unlawful act caused the destruction of the business relationship which was the target of the interference."  *Med. Mut. Liab. Soc.*, 339 Md. at 54, 660 A.2d at 439.

"In order to sustain a claim for tortious interference with prospective advantage 'plaintiffs must identify a possible future relationship which is likely to occur, absent the interference, with specificity.'"  *Mixter v. Farmer*, 215 Md. App. 536, 549, 81 A.3d 631, 638 (2013) (quoting *Baron Financial Grp. v. Rony Natanzon, et al*, 471 F. Supp. 2d 535, 546 (D. Md. 2006) (citing Maryland law).  "After all, without this showing, it is unclear how any of the following elements could be established: causation, damages, or indeed the defendants' wrongful intent to interfere with the relationship."  *Baron*, 471 F. Supp. 2d at 546 (internal citations omitted).

In addition, Maryland courts have "'refused to adopt any theory of tortious interference with contract or with economic relations that converts a breach of contract into an intentional tort.'"  *Hearn Insulation & Improvement Co., Inc. v. Carlos Bonilla*, AW-09-990, 2010 WL 3069953, at *10 (D. Md. Aug. 5, 2010) (quoting *Alexander & Alexander, Inc.*, 336 Md. at 654, 650 A.2d at 269-70); *Spengler v. Sears, Roebuck & Co.*, 163 Md. App. 220, 243, 878 A.2d 628,

642 (2005) (no claim for the tort of interference exists "'when there is merely a breach of contract that has an incidental effect on the plaintiff's business relations with third parties'") (internal citation omitted). "[A]cts of interference with economic relations do not become tortious simply because the defendant carries them out with a wrongful intent." *Alexander & Alexander, Inc.*, 336 Md. at 654, 650 A.2d at 271 (citing *Macklin*, 334 Md. at 305-308, 639 A.2d at 121-122). Plaintiff must allege "'both a tortious intent and improper or wrongful conduct'" to assert a claim for interference with economic relations. *Alexander & Alexander, Inc.*, 336 Md. at 656, 650 A.2d at 271 (quoting *Macklin*, 334 Md. at 301, 639 A.2d at 119).

Moreover, "[w]hen a business relationship is not codified in a contract, a defendant has a 'broader right to interfere' with it, on the theory that such interference is, from a different perspective, simply competition in the marketplace." *Gorby v. Weiner*, TDC-13-3276, 2014 WL 4825962, at *9 (D. Md. Sept. 23, 2014) (quoting *Natural Design, Inc. v. Rouse Co.*, 302 Md. 47, 69, 485 A.2d 663, 676 (1984)). Thus, if a defendant's purpose in interfering with a non-contractual business relationship has even a partial purpose of advancing his interest in competing with one of the parties, then "he is not liable in tort for that interference unless the defendant acts with 'tortious intent.'" *Gorby*, 2014 WL 4825962 at *9 (quoting *Natural Design, Inc.*, 302 Md. at 73, 485 A.2d at 676).

In Count V, plaintiff makes no allegation that there was an enforceable contract between Philips and the customer that Hayes allegedly solicited, thus casting its claim as one for interference with a potential business relationship. By plaintiff's allegations, Hayes "was involved in soliciting, on GE Healthcare's behalf, a large health system customer with whom Hayes worked while at Philips." ECF 1, ¶ 43. The facts do not suggest that Hayes was acting intentionally to injure Philips. Rather, he was acting to advance his own interest in securing a competitive

30

advantage for GE Healthcare over Philips and to promote his own position.  *Id.* ¶ 80.  As a result, Hayes would not be liable for tortious interference unless "the means by which he interfered" in Philips business relationship with its customer was independently wrongful.  *Gorby*, 2014 WL 4825962 at *9.

Philips has alleged that Hayes engaged in independently wrongful conduct by misappropriating Philips trade secrets, breaching his duty of loyalty, and engaging in unfair competition.  ECF 10 at 25.  Further, plaintiff has alleged that as a result of these acts, Philips lost a customer, and therefore suffered harm.  ECF 1, ¶¶ 43, 79.  Therefore, plaintiff has adequately pleaded a claim for tortious interference with prospective economic advantage.  *See Gorby*, 2014 WL 4825962 at *10 (finding tortious interference claim adequately pleaded because defendant's interference was without just cause when he interfered in company's relationship by "means of an act that was itself wrongful").  Accordingly, I shall deny the Motion with respect to Count V.

### E.  Unfair Competition (Count VI)

In Count VI, plaintiff asserts unfair competition under Maryland law.  ECF 1, ¶¶ 84-86.

Maryland's common law tort of unfair competition can extend to "'all cases . . . in the field of business.'"  *Electronics Store, Inc. v. Cellco Partnership,* 127 Md. App. 385, 407, 732 A.2d 980, 991 (1999) (quoting *Baltimore Bedding Corp. v. Moses,* 182 Md. 229, 236, 34 A.2d 338, 342 (1943)).  Generally, "[u]nfair competition is 'damaging or jeopardizing another's business by fraud, deceit, trickery or unfair methods of any sort.'"  *Thompson v. UBS Financial Services, Inc.*, 443 Md. 47, 60, 115 A.3d 125, 133 (2015) (quoting *Balt. Bedding Corp,* 182 Md. at 237, 34 A.2d at 342) (internal quotation marks omitted).  "[U]nfair competition makes an individual liable for a deception that results in 'the goods of one dealer [being] passed off as the goods of another, and the seller receiv[ing] the profit which he would not have received except for such deception.'"  *Gorby*, 2014 WL 4825962 at *6 (quoting *Edmondson Village Theatre v. Einbinder,* 208 Md. 38,

44, 116 A.2d 377, 380 (1955)).

However, unfair competition is not limited to "passing off" a competitor's wares as one's own.  *Delmarva Sash & Door Co. of Md., Inc. v. Anderson Windows, Inc.*, 218 F. Supp. 2d 729, 733 (D. Md. 2002) (citing *GAI Audio of New York, Inc. v. Columbia Broadcasting System, Inc.,* 27 Md. App. 172, 189, 340 A.2d 736, 747 (1975)); *Edmondson Village Theatre,* 208 Md. at 42, 116 A.2d at 379)).  As Judge Blake noted in *Delmarva*, 218 F. Supp. 2d at 733, the Maryland Court of Appeals "has preserved a high degree of flexibility in the law of unfair competition."   She reiterated, *id.* (quoting *Balt. Bedding,* 182 Md. at 237, 34 A.2d at 342):

> What constitutes unfair competition in a given case is governed by its own particular facts and circumstances.  Each case is a law unto itself, subject, only, to the general principle that all dealings must be done on the basis of common honesty and fairness, without taint of fraud or deception.

Moreover, "[t]he legal principles which are controlling here are simply the principles of old-fashioned honesty.  One [person] may not reap where another has sown, nor gather where another has strewn."  *GAI Audio,* 27 Md. App. at 192, 340 A.2d at 748 (citation omitted).  Therefore, "in cases of unfair competition, fraudulent intent is not essential . . . ."  *Edmondson Village Theatre,* 208 Md. at 46, 116 A.2d at 381.

Defendant argues that this claim should be dismissed because the MUTSA is "the exclusive remedy for actions concerning the misappropriation of trade secrets."  ECF 7-1 at 17-18.  Philips counters that an unfair competition claim "is a permissible alternative pleading to a misappropriation claim where a plaintiff alleges that the defendant obtained and unfairly used not only its trade secrets but also its confidential information."  ECF 10 at 20.

To be sure, subject to certain exceptions, the MUTSA provides the exclusive civil remedy for the misappropriation of a trade secret.  C.L. § 11-1207; *Bond v. PolyCycle, Inc.*, 127 Md. App. 365, 377 n.2, 732 A.2d 970, 976 n.2 (1999).  However, information that "does not qualify as a

32

'trade secret'…falls outside of MUTSA protection." *Telogis, Inc. v. InSight Mobile Data, Inc.*, PWG-14-563, 2014 WL 7336678, at *5 (D. Md. Dec. 19, 2014) (quoting *Allstate Ins. Co. v. Warns*, CCB-11-1846, 2013 WL 6036694, at *5 (D. Md. Nov. 12, 2013)); *see also Structural Pres. Sys., LLC, v. Andrews*, MJG-12-1850, 2013 WL 3820023, at *5 (D. Md. July 23, 2013) (concluding that "claims based on Proprietary Information that is not a MUTSA trade secret…are not preempted by the MUTSA").

Here, plaintiff claims that defendant acquired not only plaintiff's trade secrets, but also "other confidential information."   ECF 1, ¶ 84.   This suggests that the "other confidential information" could be separate from the trade secrets at issue under the MUTSA.   But, even if it is later determined that all of the information qualifies as a trade secret, the alternative pleading need not be precluded at this stage of the proceeding.   *Swedish Civil Aviation*, 190 F. Supp. 2d at 801 (allowing an alternative pleading for breaching duty of a confidential relationship in MUTSA suit in light of "the liberal federal pleading standards").   Accordingly, Count VI is not subject to dismissal on preemption grounds.

Even if not preempted, defendant argues, the Complaint does not support a claim for unfair competition because Philips has not alleged that "Hayes used or disclosed any trade secrets for the purpose of soliciting Plaintiff's customers."   ECF 7-1 at 18; ECF 13 at 19.   However, defendant fails to provide any justification or support for this argument.

Plaintiff alleges that Hayes accessed, printed, and downloaded Philips' trade secrets and other confidential information with the intention of using those documents for his own benefit and the benefit of GE Healthcare.   ECF 1, ¶¶ 84, 85.   According to Philips, Hayes has used that information "to attempt to solicit at least one of Philips' customers."   *Id.* ¶ 85.   Further, plaintiff alleges that Hayes' conduct "substantially interferes with Philips' ability to compete with GE

Healthcare on the merits of their products or otherwise." *Id.* ¶ 86.

Given the flexibility of the cause of action, accepting all allegations in the Complaint as true, and drawing all reasonable inferences in plaintiff's favor, I am satisfied that plaintiff has stated a plausible claim of unfair competition against Hayes.  *See MedServ International, Inc. v. Rooney*, AW-05-3173, 2006 WL 8457075, at *3 (D. Md. June 28, 2006) (sustaining a claim for unfair competition after dismissing a claim for tortious interference based on same allegations because of the "broad scope of the conduct actionable under this tort").

For these reasons, I shall deny the Motion with respect to plaintiff's unfair competition claim in Count VI.

### IV.   Conclusion

For the foregoing reasons, the Motion (ECF 7) is DENIED.  An Order follows, consistent with this Memorandum Opinion.


Date: September 9, 2020                              _____/s/_____

                                                    Ellen L. Hollander
                                                    United States District Judge